**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**


IN RE:
                                                    CASE NO. 09-70830-M-13
WILLLIAM J. LECROY                                  CHAPTER 13 BANKRUPTCY
                  DEBTOR
_____


WILLLIAM J. LECROY
                  PLAINTIFF

V.                                                  ADV. NO.

KNAPP MEDICAL CENTER  AND
VAL-RAM INC.  D/B/A AMERICAN
FINANCIAL BUREAU
                  DEFENDANTS

**COMPLAINT FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY
PURSUANT TO 11 U.S.C. § 362(k)(1) AND/OR § 105, AND FOR ENFORCEMENT
OF THE ORDER(S), RULE(S) AND INJUNCTION(S) OF THE COURT PURSUANT TO
11 U.S.C. §105 AND 28 U.S.C. § 2201**

**TO THE HONORABLE BANKRUPTCY JUDGE MARVIN ISGUR:**

Plaintiff would show the Bankruptcy Court as follows:

**NATURE OF THE CASE**

1.      Mr. LeCroy is 71 years old and suffers from a rare degenerative brain
disease known as Progressive SupraNuclear Palsy.  The disease is incurable and
he requires 24-hour care.  He is on Medicare and his income is derived only
from Social Security.  He is an honorable and responsible person who felt
humiliated and embarrassed at the thought of seeking bankruptcy protection to
deal with his medical debt.  He nonetheless chose this path because he felt

there were no other options and he was looking forward to being left alone by his creditors.

2.     This suit is brought because one of Mr. LeCroy's medical providers refuses to abide by the bankruptcy laws.  Defendant Knapp Medical Center received no less than four notices of Mr. LeCroy's bankruptcy filing, yet has continued to dun him.  Worse, it hired a collection agency, Defendant Val-Ram, Inc. d/b/a American Financial Bureau to pursue him.  Even after the collection agency was given notice of Mr. LeCroy's bankruptcy, it continued to harass him.

3.     The combined actions of both Defendants causes Mr. LeCroy needless suffering and he asks this Court to intervene so that he may live out his life peacefully.

## THE PARTIES AND DEFINITIONS

4.     "Mr. LeCroy" shall mean William J. LeCroy, who is the individual in the above-stated adversary proceeding and Debtor in the above-stated pending Chapter 13 bankruptcy.

5.     "Defendant Knapp" shall mean Knapp Medical Center, the service provider for Mr. LeCroy.  Defendant Knapp is a scheduled creditor in Mr. LeCroy's Chapter 13 bankruptcy.

6.     "Defendant AFB" shall mean Val-Ram, Inc. d/b/a American Financial Bureau, who is the collection agency hired by Defendant Knapp.

7. "Defendants", collectively, shall mean the named Defendants in the above-stated adversary proceeding.  It is the intent of Mr. LeCroy that the stated Defendants be served with a copy of the Complaint, summons issued and any orders or directives of the Court pursuant to Rule 7004 of the Rules of Bankruptcy Procedure.

8. "Bankruptcy" shall mean the Chapter 13 bankruptcy Number 09-70830 as filed by Mr. LeCroy on November 19, 2009 in the Southern District of Texas, McAllen Division.

9. "Ms. Stone" shall mean Ellen C. Stone and/or the attorneys and/or staff of her law firm The Stone Law Firm P.C., who are the attorney and law firm for Mr. LeCroy in his bankruptcy.

10. "Trustee" shall mean Cindy Boudloche, or the Trustee assigned in the bankruptcy of Mr. LeCroy.

11. "Collection practices or actions" shall mean the attempts to collect money and/or property from Mr. LeCroy and/or the bankruptcy estate.

### JURISDICTION, CORE PROCEEDING, VENUE AND APPLICABILITY OF BAPCPA

12. This Court has jurisdiction to consider the claims of this Complaint pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a).

13. The Court has the authority to enter a final order regarding this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2) and any related proceeding pursuant to 28 U.S.C. § 157(c)(1).

14.    This Bankruptcy Court is the proper venue for this adversary proceeding pursuant to 28 U.S.C. § 1409.

15.    Since the above-entitled and numbered Chapter 13 bankruptcy was filed on November 19, 2009, BAPCPA applies to this adversary proceeding.

### THE FACTS AND BACKGROUND (STATED IN TIMELINE FASHION AS POSSIBLE)

16.    Before the filing of the bankruptcy Mr. LeCroy owed Defendant Knapp a total of $1,256.19 for medical services rendered.   There were two separate account numbers.  Account number ending in 2034 ("2034") was for $188.19 and account number ending in 0547 ("0547") was for $1,068.00.  Due to a clerical error, 0547 was not listed on Mr. LeCroy's schedule F.

17.    On November 19, 2009 Mr. LeCroy commenced the bankruptcy by the filing of a Chapter 13 petition pursuant to 11 U.S.C. § 301.  The filing of this bankruptcy petition constituted an order for relief under 11 U.S.C. § 301.

18.    The commencement of the bankruptcy created an estate that included, among other things, "all legal or equitable interests of the debtors in property as of the commencement of the case," pursuant to 11 U.S.C. § 541.

19.    The post-petition earnings of Mr. LeCroy were made part of the bankruptcy estate pursuant to 11 U.S.C. § 1306(a).

20.    Mr. LeCroy's post-petition income or earnings are not subject to payment to Defendants for any claim, obligation or liability.

21.    On November 19, 2009 Mr. LeCroy filed a mailing matrix with the Bankruptcy Court that listed Defendant Knapp at a correct address.

4

22.    On November 19, 2009 Mr. LeCroy filed bankruptcy schedules with the Bankruptcy Court.  These schedules included the pre-petition claim of Defendant Knapp.

23.    On November 19, 2009 Mr. LeCroy filed a Chapter 13 Plan with the Bankruptcy Court.  This Plan provided for the pre-petition claim of the Defendant Knapp as unsecured.

24.    On November 19, 2009, Ms. Stone's office mailed correspondence to Defendant Knapp at a correct address.   The correspondence gave Defendant Knapp relevant information regarding Mr. LeCroy's bankruptcy.  The letter also advised Defendant Knapp that the bankruptcy filing operates as an automatic stay which prohibits "any act to collect, assess or recover a claim".  The letter also warned that violations "may be considered contempt of court and punished accordingly."

25.    On November 25, 2009, the Court's Initial Order was mailed to Defendant Knapp at a correct address.

26.    On December 30, 2009 the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines was mailed to Defendant Knapp at a correct address.  This notice provided the complete social security number of Mr. LeCroy to assist Defendant Knapp to correctly identifying him and his account(s).  This notice warned, in conspicuous language, against violating the automatic stay.

27.    On December 31, 2009, the Notice of Confirmation Hearing was mailed to Defendant Knapp at a correct address.

28.    On or about January 7, 2010, despite receiving no less than 4 notices of the filing of Mr. LeCroy's bankruptcy, Defendant Knapp mailed correspondence to Mr. LeCroy regarding account number 2034.   The correspondence demanded immediate payment of $188.19.   In a separate mailing, Defendant Knapp mailed correspondence to Mr. LeCroy regarding account number 0547.   The correspondence demanded immediate payment of $1.068.00.   These two demands for payment were very upsetting to Mr. LeCroy, who was now afraid that Defendant would not respect his bankruptcy rights.

29.    On or about February 23, 2010, Defendant AFB on behalf of Defendant Knapp mailed Mr. LeCroy correspondence regarding account number 2034 (which Defendant AFB referred to as 0304 in its letter).   The letter was captioned "URGENT NOTICE" (emphasis in original) and stated that the debt of $188.19 had been referred to its office for collection.   Mr. LeCroy was extremely upset at this mailing since he was unsure what could happen if Defendants continued to demand payment.

30.    On March 2, 2010, in response to Defendant AFB's February 23, 2010 demand, Ms. Stone sent a correspondence to Defendant AFB at a correct address. The correspondence gave Defendant AFB relevant information regarding Mr. LeCroy's bankruptcy.  The letter also advised that the automatic stay was in place and to cease all contact with Mr. LeCroy.  It further warned, "[I]f you continue to violate the automatic stay, we may be forced to file a lawsuit against you for your violation of the court order."    This letter placed Defendant AFB on notice that

6

damages would be sought for mental anguish caused to Mr. LeCroy as well as costs, attorney fees and punitive damages.

31.    On or about April 27, 2010, despite having received notice of Mr. LeCroy's bankruptcy filing from Ms. Stone's office, Defendant AFB on behalf of Defendant Knapp mailed Mr. LeCroy correspondence regarding account number 2034. The letter was captioned "URGENT NOTICE" (emphasis in original) and stated that the debt of $188.19 had been referred to its office for collection.  In a separate envelope, Defendant AFB on behalf of Defendant Knapp mailed Mr. LeCroy correspondence regarding account number 2034. The letter was captioned "URGENT NOTICE" (emphasis in original) and stated that the debt of $1,068.00 had been referred to its office for collection.

32.    These last two letters from Defendant AFB caused Mr. LeCroy great pain. He was petrified of what could happen, since he now believed the bankruptcy would not protect him from Defendants unceasing harassment.  He was up all night with stomach cramps, incontinence and diarrhea.

33.    The pre-petition claim held by Defendant Knapp is unsecured.

34.    Mr. LeCroy is financially vulnerable.   Mr. LeCroy's income status, bankruptcy filing and health condition are evidence to support this fact.

35.    Mr. LeCroy has attempted to provide Defendants an opportunity to reevaluate their actions and make a determination that such actions should cease, but Defendants have either ignored his efforts or simply refuse to follow the law.

7

36.     Mr. LeCroy lacks the resources necessary to further police the conduct of Defendants and, hence, prevent the unique harm that has occurred.

37.     The collection practices and/or actions of Defendants, as stated above, has resulted in a substantial amount of undue frustration, anxiety and mental anguish or distress on the part of Mr. LeCroy, which is more than fleeting and inconsequential, and which is substantiated by the facts of this case alone, but is also manifested in the following ways, but not necessarily limited to:

      a.    Violation of the core bankruptcy rights and Constitutional rights.
      b.    Headaches.
      c.    Stomach cramps, incontinence and diarrhea.
      d.    Loss of sleep.
      e.    Anxiety.
      f.    Depression.
      g.    Shock of conscience.
      h.    Impaired enjoyment of life.
      i.    A sense of dread.
      j.    A sense of failure.
      k.    A significant amount of stress.
      l.    Harassment.
      m.    Fright.
      n.    A feeling of paranoia.
      o.    The feeling of being ticked off.
      p.    Grief.
      q.    A sense of embarrassment and discomfort that is greater than the general level of embarrassment and discomfort felt in filing bankruptcy or for the inability to pay a debt or bill.

### VIOLATIONS OF THE AUTOMATIC STAY PROVISIONS

38.     The allegations contained above under the heading *Facts and Background* are reasserted as if fully set forth herein for this cause of action.

39.     With 11 U.S.C. § 362(k)(1) Congress provides Mr. LeCroy the right to sue for violations of the automatic stay.

40.     The automatic stay is essentially a court order and an injunction.

41.     Therefore, the automatic stay is also enforceable pursuant to 11 U.S.C. §105.

42.     As it pertains to this cause of action:

   a.     In 11 U.S.C. § 362(k)(1) Congress gave Mr. LeCroy, the right to sue for violations of the automatic stay.

   b.     11 U.S.C. § 101(12) defines "debt" as a liability on a claim, and "claim" is defined by § 101(5).

   c.     11 U.S.C. § 102(2) defines "claim against the debtor".

   d.     11 U.S.C. § 101(10) defines the term "creditor".

   e.     11 U.S.C. § 541(a) defines what is property of the estate.

43.     The 5th Circuit has repeatedly stated the three requirements to establish liability under § 362(k)1).  *In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005); *Campbell v. Countrywide*, 545 F.3d 348, 355 (5th Cir. 2008); and, *In re Repine*, 536 F.3d 512, 519 (5th Cir. 2008).

   a.     The existence of the automatic stay was known by the Defendants in that Defendants were made aware of the existence of this bankruptcy;

   b.     The acts described on the part of Defendants were intentional, meaning what is relevant is not the intent to violate the automatic stay, but rather the intent to commit the act that violated the automatic stay (it is clear that Defendants intend to collect the prepetition claim); and,

9

    c.    The acts of Defendants violated 11 U.S.C. § 362(a)(1), and (6) for which no exception exists under 11 U.S.C. § 362(b).

44.    No good faith exceptions exist for the violations.

45.    No present inability to comply with the automatic stay beyond a mere allegation of inability exists on the part of Defendants.

### ENFORCING THE INJUNCTION(S) OR ORDER(S) OF THE COURT

46.    The allegations contained above under the heading *Facts and Background* are reasserted as if fully set forth herein for this cause of action.

47.    Due to Defendants' actions it has become necessary for this Court to take further specific action to enforce the injunctions, orders and Code and Rule provisions resulting from this bankruptcy.  Mr. LeCroy requests this Court to:

    a.    Find Defendants in contempt for failing to abide by the orders, injunctions, Bankruptcy Code or Rules pursuant to 11 U.S.C. § 105;

    b.    Issue any declaratory judgment to determine the threshold questions of law, facts, rights, claims, or debts of all parties to this adversary proceeding, the violation(s) of Defendants, the jurisdiction of this Court and/or any actual controversy that may exist pursuant to 28 U.S.C. § 2201; and/or

    c.    Issue any further or more specific injunctions to better define or curtail the acts or conduct of Defendants in the future pursuant to 11 U.S.C. § 105.

### DAMAGES

10

48.    The allegations contained above under the heading *Facts and Background* are reasserted as if fully set forth herein for this cause of action.

49.    The fresh start promised to Mr. LeCroy would be hardly made whole simply by an order that repeats the law, rules and injunctions with which Defendants already did not comply.  This makes damages necessary.

50.    Each cause of action above allows or requires the award of damages.

## Personal Damages

51.    Mr. LeCroy seeks an award of actual damages to cover the value of any loss, any out-of-pocket expenses or cost incurred, including the value of the personal time of Mr. LeCroy in having to deal with the conduct and actions of Defendants, and in having to participate in this adversary proceeding.

## Attorneys' Fees And Costs

52.    It was necessary to employ Charles (Chuck) Newton and his law firm, Charles Newton and Associates, to represent Mr. LeCroy in advising, preparing and participating in this adversary proceeding.  Mr. LeCroy requests this Court to award to Chuck Newton and his law firm all attorneys' fees, costs and expenses due and owing, and which will become due and owing expended as a result of this representation.

53.    Ms. Stone, and her law firm, represents Mr. LeCroy in the above-stated bankruptcy.  The firm has been required to expend, on his behalf, attorneys' fees and costs in regard to the specific matters stated above, as well as assisting Chuck Newton in his duties in this regard.  These duties should reasonably be outside of

the firm's normal or typical duties in regard to representing Mr. LeCroy in this bankruptcy case.   Mr. LeCroy requests this Court to award to Ms. Stone, and her law firm, all attorneys' fees and costs expended, and which will be expended as a result of prosecuting this adversary proceeding to conclusion.

### Emotional Distress

54.    Damages for emotional distress are sought by Mr. LeCroy.

### Pre-judgment Interest

55.    An award of pre-judgment interest is being sought by Mr. LeCroy.

### Post-judgment Interest

56.    An award of post-judgment interest is being sought by Mr. LeCroy.

### Punitive Damages

57.    Punitive damages should be awarded to Mr. LeCroy.

WHEREFORE, PREMISES CONSIDERED, it is the prayer of Plaintiff, Mr. LeCroy, that the Court will:

1.    Find that Defendants violated one or more of the automatic stay provisions in the underlying bankruptcy;

2.    Find that the violation of the automatic stay by Defendants was or is "willful" and/or intentional;

3.    Enforce the order(s), rule(s) and injunction(s) of this Court or the Bankruptcy Code or Rules as necessary, including, but not limited to, a finding of contempt on the part of Defendants, the issuance of any declaratory judgment, and/or the issuance of any injunction;

4.      Sanction or award against Defendants all actual damages for all financial and non-financial harm or injury incurred by Mr. LeCroy;

5.      Sanction or award against Defendants and to Mr. LeCroy, and for the benefit of Chuck Newton, all of the attorneys' fees, costs and expenses incurred with Chuck Newton, and the law firm of Charles Newton & Associates, in representing Mr. LeCroy in these matters;

6.      Sanction or award against Defendants and to Mr. LeCroy, and for the benefit of Ms. Stone, all of the attorneys' fees, costs and expenses incurred by the law firm in representing Mr. LeCroy in the matters particular to this adversary proceeding;

7.      Sanction or award against Defendants and to Mr. LeCroy emotional distress damages;

8.      Sanction or award against Defendants and to Mr. LeCroy punitive damages;

9.      Award pre-judgment interest;

10.     Award post-judgment interest; and

11.     Grant any and all other relief in equity or in law to which Mr. LeCroy may be entitled.

Respectfully submitted,

*/s/ Charles (Chuck) Newton*

_____
**CHARLES (CHUCK) NEWTON**
Texas Bar No. 14976250

**CHARLES NEWTON & ASSOCIATES**
190 N. Millport Circle
The Woodlands TX 77382
Phone (281) 681-1170, Ext. 3
Fax (281) 715-5755
Email chuck@chucknewton.net

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Complaint was served on the following parties, not otherwise served by summons, via electronic means, if possible, otherwise by the means stated below:

William J. LeCroy                                          MAIL (First Class)
*Debtor / Plaintiff*                                       FAX (No)
609 Kerry Lane                                             EMAIL (No)
McAllen TX 78501

Ellen C. Stone                                             MAIL (No)
The Stone Law Firm, P.C.                                   FAX (No)
*Bankruptcy Atty. for Mr. LeCroy*                          EMAIL ignmca@ellenstonelaw.com
4900 N. 10th Street
Suite A2
McAllen TX 78504

Cindy  Boudloche                                           MAIL (First Class)
*Chapter 13 Trustee*                                       FAX (No)
555 N. Carancahua                                          EMAIL (No)
Suite 600
Corpus Christi TX 78476

Office of the United States Trustee                        MAIL (First Class)
606 N. Carancahua                                          FAX (No)
Corpus Christi TX 78476                                    EMAIL (No)

DATED: June 11, 2010

*/s/ Charles (Chuck) Newton*
_____
**CHARLES (CHUCK) NEWTON**

14